Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 The liaste and recklessness, to use no harsher term, with which this grant was made, cannot but suggest grave doubts of the
 
 bond fides
 
 of the transaction. It nowhere a'ppears that Roland had any claim on the bounty of the Mexican nation, or ability, or intention to occupy so large a tract of country; and yet Pico, near the time when power passed from his hands, in the niidst of civil commotion, disregarding the customary and established modes of making concession -of the public domain to meritorious persons; without an informe ; without a map; without any inquiry whatever; grants to him eleven ’leagues of land (the'maximum quantity grant-able to a single person) in a remote wilderness, occupied by hostile Indians, and of which so little was known that the best description that could be given of it was, that it was situated on the banks of the San Joaquin and Stanislaus rivers.
 

 That the plain requirements of the Mexican colonization lqivvs were violated in. these proceedings, is very apparent from the frequent decisions of this court in this class of cases; . but it is unnecessary to examine the effect of this departure ou this title, if it were genuine, because in our opinion’ it has no - validity.'. And it is riot the first time, iii the history of California land cases1 in this court, that grants máde -at or
 
 *747
 
 near the.time of themne in controversy purports to be made by Qo'veruor Pico, an'd countersigned by his .secretary, Moreno, have been held not to be genuine.
 
 *
 

 The struggle in this cáse, ás in others- of like character, is to make up by parol proof for a deficiency of record evidence. Pico and Moreno have been examined in support of the title, but their testimony is singularly unsatisfactory. Pico has no recollection of making the grant, nor, indeed, of Roland’s ' application, but is able to identify his,signatures. 'Although he knew Roland — that he had married a Mexican woman, the number of his children, and the, state of his property— yet he cannot recollect that he donated to him an immense tract in a remote part o'f the country, and broke through all* the forms of law in order to do it quickly.
 

 A transaction of this magnitude, where the favored -party was known, is not apt to be forgotten, and to say the least on the subject,■ this want of memory on Tico’s part, is in itself a circumstance of great suspicion that the grant was’ never made. Moreno’s memory, if somewhat better than Pico’s, is not enough so to clear away the difficulties-from this title.'
 

 It is a little singular, if Pico’s signatures to the papers produced by the claimant are authentic, that they shoiild differ so’ materially from his signatures to public documents' of that date. In
 
 Luco
 
 v.
 
 The United States,
 

 †
 

 the same differ-, enees existed, and the court adopted the conclusion that they were not genuine. If these inequalities in Pico’s signatures create distrust as to their genuineness, the different phraseology-in describing the land in the borrador, from that us'ed in the titulo, increases, the distrust in the authenticity of this title.
 

 In the borrador the land is described “ as eleven leagues, situated on the banks of the rivers Stanislaus and San Joaquin,” corresponding'with the description giveu in the peti
 
 *748
 
 tion, while the-titulo, issued on the same day as the borrador, directs “that the measurement of the eleven leagues snail be on the .banks of. the Stanislaus, of the width of one league, commencing where the two rivers run.” On the theory that the borrador and titulo were actually signed on the’ samfe day, how did it come to pass that the designation of the tract is so much more particular in the one than in the other? It will be borne in miud that Pico and Moreno have no definite recollection concerning this grant, and yet in this most' important point the title-paper issued to the claimant differs essentially from the one which forms part of the expediente. "Why think of the
 
 necessity
 
 of this change of description, when both documents were made on the same day, and form part of the same transaction ? The change of description cannot be explained on the hypothesis that both papers wei’e prepared and executed on the same day; but it is easily understood, if the titulo was prepared at a subsequent date, whet the parties interested could see that a more definite'description was wanting, than that which the borrador furnished.
 

 But there are much graver difficulties affecting this title than those which we have noticed.
 

 , The claimant,.in attempting to prove’too much, has established the falsity of his.title. This court has frequently decided, that the approval by the Departmental Assembly was not necessary to the validity of a grant; but has also observed that', under certain circumstances, the absence of such approval is entitled to great weight. It was, doubtless, with a view to meet all objections, and to show the fulness of his title, thaf tliq claimant furnished evidence that the Assembly did approve the grant. ’ If this evidence is true, it strengthens the-claimant’s title, but if false, it destroys all confidence in it. It is important therefore to ascertain whether the As'sembly met on the 4th day of May, 1846. Pico certifies that •it did meet’on that day, and approved this grant; but it is clear that very little reliance can be placed on this certificate, if genuine, because, when interrogated on the subject, Pico testifies that he has no recollection of -the approval, nor, indeed, of giving -a certificate to thaf effect, and but for the
 
 *749
 
 fact that he sees his signature to the certificate of approval, he has no reason to believe that the grant was approved. • It. is true he testifies that there was great looseness in the administration of public affairs at the time; but from this no inference can be properly drawn that the Departmental Assembly convened on the 4th day of May, 1846. It will not do to say that there might have been a meeting of that body on that day. In the absence of direct proof of the fact, there must be evidence affording reasonable grounds to believe that the meeting actually took place, and that the records of it are lost. But we are not left, in this case, to rely on conjectures or probabilities, for, fortunately, the journals of the Departmental Assembly have been preserved, and they show that the body was not in session at the date when the testimonio states the grant to have, been approved. It appears by the journals that the earliest meeting in May was the 8th day of 'the month, when the minutes of the meeting held on the 29th day of the preceding month of April, as was customary, were read and approved.
 

 It is not credible that the Assembly could have met between these dates, and overlooked the fact in recording the proceedings of the 8th of May.
 

 To escape the force of this evidence, the claimant has pointed out some discrepancies and omissions in the journals, but they are not of a character requiring notice, and do not tend to prove that the Assembly convened on the day when the testimonio purports to have been signed.
 

 If Pico does not remember the sale of this large tract of country, nor the fact of approval by the Assembly, of whát value is his testimony that' the approval must have been obtained, because the document certifying to it bears his signature ?
 

 But if what has been said is not enough to show that the. alleged grant was not issued to Roland, there is still further evidence in the record, which is conclusive on the point.
 

 In deciding this case we aré to be governed by the laws and usages of the Mexican-government, -in granting lands, b'efore the conquest of California, and According to the prin-
 
 *750
 
 . eiplos of equity. Tésted by these rules, this claim has neither a legal or equitable status.
 

 Lands were to be. granted by' the colonization laws of Mexico, for the purpose of cultivating and inhabifiugthem, and nó more than eleven leagues could be granted to a single individual. It is stipulated in the record that, on the 22d day of July, 1845, Governor Pico granted to Jolm Roland' and Julius Horkman, four leagues of land, and that the claim has been prosecuted and confirmed. And that on the 6th day of May, 1846, only four days after the date of the grant in controversy, a still further grant was made to, ■John Roland'and Louis Arenas, <?f the sobrantes of eertaiu ratiebos, to, the extent of nine leagues. ■ This latter .grant is also claimed to be genuine, and has been presented for con.firmation, and is now p6n¡,iing in the District Court of 'California. AH these grants cannot be sustained, because Pico had no power to make them. If they could be sustained Roland would receive from .the Mexican government (if the surplus lands of the ranchos reached nine leagues) a quantity of land exceeding seventeen leagues. The United States are under no obligations to recognize grants which aggregate, in the hands of one person, such a quantity of land, even if they were actually made; but tlie strong probability is, that the eleven-league grant was abandoned when the petition was presented, and the grant obtained for other lauds in a different part of the country. In no other way can we acquit Pico of a wilful departure from the law under which, he acted, and account, for the petition and grant of the 6th of May.
 

 It is fair to infer from this record that Roland was an intelligent man, and knew the limit of the governors power to grant lands, and the corrective applied by the Departmental Assembly when he exceeded his authority. If so, he knew Pico had no right to make the eleven-league grant, because ho had already conceded to him the undivided half of four leagues, in July, 1845. It may be, before the proceedingsuvcre completed for the eleven-league grant, he sawhiá difficulty, and concluded to rely on the first grant made
 
 *751
 
 to him, and to ask for a concession of other lands nearer the settled part of the State, and which land's, although' less in quantity, were more desirable. Adopting this theory, the conduct of Roland in asking for other lands on the 6th of May,-can be explained. On any other theory his petition, on that day for an additional grant, and !Pico’s action conceding it, were palpable frauds committed against the letter and spirit of the colonization daws of Mexico.
 

 Without pursuing the subject further, in oup opinion this claim should not be confirme|d.,
 

 ■ The archive papers, fail to make out the title, and the papers produced by the .claimant are not genuine) but the result of an afterthought, and would never have been, produced i'n court-if the unparalleled growth of California had not stimulated ■ the cupidity of speculators to experiment with fragments of title-papers left Unfinished by Pico,' and which were gathered up by our officers on the conquest of the country.
 

 Decree affirmed
 

 MILLER and FIELD, JJ., dissenting.
 

 *
 

 Knight’s Case, 1 Black, 227; Galbraith’s Case, 2 Id 394; Luco’s Case, 23 Howard, 543.
 

 †
 

 23 Howard, 543.